Daniel Alberstone (SBN 105275)
dalberstone@baronbudd.com
Roland Tellis (SBN 186269)
rtellis@baronbudd.com
Mark Pifko (SBN 228412)
mpifko@baronbudd.com
Jonas P. Mann (SBN 263314)
jmann@baronbudd.com
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone:   (818NN) 839-2333
Facsimile:    (818) 986-9698

Attorneys for Plaintiffs, individually, and on
behalf of other members of the public
similarly situated

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| PAUL HANCOCK, ANALISA MOSKUS, BRANDON HAAG, ADRIANA AVILA, and NYLE DAVIS, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiffs,<br>vs.<br><br>WELLS FARGO & COMPANY, WELLS FARGO BANK, N.A., and NATIONAL GENERAL INSURANCE COMPANY,<br><br>Defendants. | Case Number:  3:17-cv-04324-JD<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

For their First Amended Complaint against Defendants Wells Fargo & Company and Wells Fargo Bank, N.A. (collectively "Wells Fargo") and Defendant National General Insurance Company ("National General") (collectively "Defendants"), Plaintiffs Paul Hancock, Analisa Moskus, Brandon Haag, Adriana Avila, and Nyle Davis (collectively "Plaintiffs"), individually, and on behalf of all other members of the public similarly situated, based on information and belief, allege as follows:

## NATURE OF THE ACTION

1.      On September 27, 2016, following the announcement of its $185 million settlement with federal regulators concerning its fraudulent account scheme, Wells Fargo's board of directors issued a press release stating, "we are committed to ensuring that *all* aspects of the Company's business are conducted with integrity, transparency, and oversight."[1]  Now, nearly a year later, despite Wells Fargo's purported "commitment," it has once again been revealed that even under its new management, Wells Fargo's fraudulent practices continue.

2.      For more than a decade, Wells Fargo, together with auto insurance giant National General, engaged in a scheme to bilk millions of dollars from unsuspecting customers who were forced to pay for auto insurance they did not need or want.  As early as 2008, Wells Fargo investigated the illegality of its practice of charging customers for "unnecessary and unauthorized collateral protection insurance," but rather than take responsibility for its conduct, it denied that it did anything wrong and engaged in efforts to bury the truth.

3.      Now, many years later, following the shocking revelation that more than 800,000 auto loan customers paid for unnecessary auto insurance policies, pushing nearly 250,000 of them into delinquency, and resulting in nearly 20,000 unlawful vehicle repossessions, Wells Fargo's spokesperson Jennifer A. Temple publicly stated, "We take

---

[1] See http://www.businesswire.com/news/home/20160908006266/en/Wells-Fargo-Issues-Statement-Agreements-Related-Sales (emphasis added).

full responsibility for these errors and are deeply sorry for any harm we caused customers." This lawsuit tests the truth of that statement and the depth of Wells Fargo's commitment to its customers.

4.      The auto loan customers impacted by Wells Fargo's latest-revealed scheme sustained financial damages beyond the costs of the unlawful auto insurance. The financial harm included inflated premiums, delinquency charges, late fees, repossession costs, increased interest rates, overdraft fees, and damage to customers' credit reports.

5.      Although Wells Fargo recently told the public, "Wells Fargo is committed to putting our customers' interests first 100 percent of the time," and it committed to taking "[d]isciplinary actions, including terminations of managers and team members who acted counter to [the company's] values," the character of the Wells Fargo's senior management was once again tested.[2] But, once again Wells Fargo failed, choosing concealment over transparency.

6.      When confronted by the *New York Times*, Wells Fargo scrambled, literally issuing an eleventh-hour press release at 11:22 p.m. on July 27, 2017,[3] the night before the *New York Times* article was published, despite being aware of the scandal for at least a year. Only after Wells Fargo were forced to comment before the *New York Times* story hit the newsstands, Franklin R. Codel, the head of consumer lending at Wells Fargo, essentially admitted that the reign of rampant misconduct at the bank's senior levels had not ended, stating, "We have a huge responsibility and fell short of our ideals for managing and providing oversight of the third-party vendor and our own operations."

7.      The auto insurance policies at issue in this case are commonly referred to as Collateral Protection Insurance ("CPI"). Unlike auto insurance policies commonly taken out by vehicle owners, which not only cover the insured vehicle, but also liability for

---

[2] See http://www.businesswire.com/news/home/20160908006266/en/Wells-Fargo-Issues-Statement-Agreements-Related-Sales

[3] See http://www.businesswire.com/news/home/20170727006737/en/Wells-Fargo-Announces-Plan-Remediate-Customers-Auto.

collisions with other vehicles, property loss, and bodily injury, CPI *only* covers the cost of damage to the insured vehicle.  Ordinarily, if proof of auto insurance was not received by Wells Fargo's CPI provider, in this case National General, notices were required to be sent to borrowers, to prompt them to obtain the required coverage.  However, neither Wells Fargo nor National General, which underwrote the CPI policies, checked their internal database to see if Wells Fargo's auto loan customers had insurance coverage or, if they did, they simply ignored what they learned.  Instead, Defendants imposed on customers redundant auto insurance coverage and then, frequently and without any notice, automatically deducted the cost of the CPI insurance from the customers' bank accounts, along with the regularly scheduled principal and interest payment for the auto loan.

8.     Not only were the CPI policies unnecessary, they were more expensive than the coverage borrowers obtained on their own.  Additionally, Wells Fargo received a kickback from National General in the form of shared commissions on each CPI policy, which provided the financial incentive to Defendants to unlawfully churn these unneeded and unwanted policies.

9.     Compounding the shocking nature of the misconduct, Defendants' failure to properly disclose to their customers the unlawful CPI policies and/or the resulting automatic deductions from customers' bank accounts often put them in a financial tailspin.

10.     These unlawful deductions resulted in account delinquencies, overdrawn payment accounts, increased interest rates, late fees, repossessed vehicles, and damage to borrowers' credit.

11.     When borrowers, including Plaintiffs, protested and informed Defendants that they did, in fact, maintain the required insurance and that the CPI was unnecessary, Defendants refused to remove the unlawful charges.  Borrowers were forced to pay the charges in order to maintain their accounts in good standing, avoid further late and overdraft fees and interest charges, and avoid repossession of their vehicles.

12.     This is a proposed class action brought by Plaintiffs on behalf of all persons

who obtained an auto loan from Defendants and who were required to pay for a CPI policy.  Plaintiffs challenge, as further described herein, Defendants' practice of secretly imposing such CPI on their customers and automatically deducting the cost of the such insurance from their bank accounts.

13.   Defendants formed an unlawful enterprise.  When customers financed cars with Wells Fargo, the buyers' information was automatically sent by Wells Fargo to National General, which was supposed to check a database shared between Wells Fargo and National General, to see if the borrower had insurance coverage.  If not, the insurer was required to send out notice to the borrower in order to prompt them to obtain the required coverage.  Despite these procedures, Defendants developed a uniform practice of automatically obtaining unnecessary and unlawful CPI policies and deducted the cost of the CPI policies (policy premiums and interest) automatically from their borrower' bank account.

14.   Defendants failed to properly disclose or provide any notice of the deductions for the CPI insurance policies resulting in borrowers' missed payments, late fees, account overdraft fees, higher interest rates, and even repossessed vehicles and damaged credit.

## JURISDICTION AND VENUE

15.   Jurisdiction is proper in this Court under 28 U.S.C. § 1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which members of the class of plaintiffs are citizens of states different from Defendants.  Further, greater than two-thirds of the members of the Class reside in states other than the states in which Defendants are a citizens.

16.   This Court also has jurisdiction over this matter under 28 U.S.C. §§ 1331, 1961, 1962 and 1964.  This Court has personal jurisdiction over Defendants under 18 U.S.C. §1965.  In addition, under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over the state law claims because all of the claims are derived from a common nucleus of operative facts and are such that Plaintiffs ordinarily would expect to try them

in one judicial proceeding.

17.     Venue lies within this judicial district under 28 U.S.C. § 1391(b)(1) because defendants Wells Fargo & Company and Wells Fargo Bank, N.A.'s principal place of business is in this District, and Defendants' contacts are sufficient to subject them to personal jurisdiction in this District, and therefore, Defendants reside in this District for purposes of venue, or under 28 U.S.C. § 1391(b)(2) because the acts giving rise to the claims at issue in this lawsuit occurred, among other places, in this District.

**Intradistrict Assignment**

18.     Consistent with Northern District of California Civil Local Rule 3-5(b), assignment to the San Francisco or Oakland Division is appropriate under Civil Local Rules 3-2(c) and 3-2(d), because acts giving rise to the claims at issue in this lawsuit occurred, among other places, in this District, in the City of San Francisco.

## THE PARTIES

19.     Plaintiff Paul Hancock is an individual and a resident of Indianapolis, Indiana.

20.     Plaintiff Analisa Moskus is an individual and resident of Long Beach, California.

21.     Plaintiff Brandon Haag is an individual and resident of Trempealeau, Wisconsin.

22.     Plaintiff Adriana Avila is an individual and resident of Houston, Texas.

23.     Plaintiff Nyle Davis is an individual and resident of Neosho, Missouri.

24.     Defendant Wells Fargo & Company is a corporation organized under the laws of Delaware and headquartered in San Francisco, California.

25.     Defendant Wells Fargo Bank, N.A., is a subsidiary of Wells Fargo & Company, and is a national bank organized and existing as a national association under the National Bank Act, 12 U.S.C. §§ 21 *et seq*., with its principal place of business in San

Francisco, California. [4]

26.    Defendant National General Insurance Company is a national insurance agency incorporated in Missouri, with its principal place of business in Winston-Salem, North Carolina.

27.    Whenever, in this Complaint, reference is made to any act, deed, or conduct of Defendants committed in connection with the enterprise, the allegation means that Defendants engaged in the act, deed, or conduct by or through one or more of their officers, directors, agents, employees or representatives, each of whom was actively engaged in the management, direction, control or transaction of the ordinary business and affairs of Defendants and the enterprise.

28.    Plaintiffs are informed and believes, and based thereon, allege that, at all material times herein, each Wells Fargo defendant, Wells Fargo & Company and Wells Fargo Bank, N.A., was the agent, servant, or employee of, and acted within the purpose, scope, and course of said agency, service, or employment, and with the express or implied knowledge, permission, and consent of the other Wells Fargo defendant, and ratified and approved the acts of the other Wells Fargo defendant.

29.    Wells Fargo & Company exercises specific and financial control over the operations of Wells Fargo Bank, N.A., and it dictates the policies and practices of Wells Fargo Bank, N.A.  Wells Fargo & Company also exercises power and control over the specific activities at issue in this lawsuit, and it is the ultimate recipient of the ill-gotten gains described herein.

---

[4] As other courts have observed, "Wells Fargo Bank, N.A . . . has regularly described its principal place of business as San Francisco, California."  *Mount v. Wells Fargo Bank, N.A.*, 2008 WL 5046286, at *1 (C.D. Cal. Nov. 24, 2008) (citing *Wells Fargo Bank, N.A. v. Siegel*, 2007 WL 1686980 (N.D. Cal. June 8, 2007); and *Jojola v. Wells Fargo Bank, N.A.*, 1973 WL 158166 (N.D. Cal. May 2, 1973)).

1

## FACTUAL BACKGROUND

2      30.    Defendants charged more than 800,000 auto loan borrowers for CPI auto

3   insurance that they did not need or want, which Defendants failed to properly disclose.

4   As a result, borrowers were unlawfully charged inflated CPI policy premiums and

5   interest, late fees, and, in some cases, had their vehicles repossessed. Because of

6   Defendants' unlawful acts, borrowers saw their bank accounts overdrawn, with unlawful

7   fees assessed, and their credit scores damaged.

8      31.    Borrowers financed their vehicles through Defendants.  Wells Fargo

9   provided the borrower's information to National General who was to then verify if the

10  borrower had insurance coverage on the vehicle.

11     32.    If the borrower failed to provide proof of insurance, Defendants were

12  required to send the borrower a request that he or she provide proof of insurance.

13  However, Defendants engaged in a practice of secretly and automatically imposing these

14  CPI policies on borrowers who, in many instances, already had auto insurance.  Thus,

15  borrowers were paying premiums and interest on redundant CPI policies they did not need

16  or request.

17     33.    Defendants failed to properly disclose both the CPI policies and their

18  resulting charges to borrowers.

19     34.    Because the CPI insurance charges were not properly disclosed and unknown

20  to borrowers, they often resulted in delinquencies in those cases where the borrower had

21  insufficient funds to cover the cost of the CPI policy.  In turn, Wells Fargo assessed late

22  fees to borrowers' bank accounts and charges for insufficient funds.  These actions by

23  Defendants not surprisingly resulted in damage to borrowers' credit reports as Defendants

24  reported these delinquencies to credit reporting agencies.

25     35.    The CPI insurance policies coupled with Wells Fargo's internal rules about

26  the order in which payments are applied to a customer's account further exacerbated the

27  problem.  When Wells Fargo received a payment on an auto loan account, they applied it

28  in the following order: interest on the auto loan, interest on the CPI insurance, principal on

the auto loan, and then premium on the CPI policy.

36.    This order of payments resulted in both an increased amount of overall interest paid by borrowers and frequently overdrawn bank accounts and auto loan delinquencies.

37.    The extra, unexpected, and undisclosed additional expense pushed approximately 274,000 auto loan customers into delinquency resulting in almost 25,000 wrongly repossessed vehicles.

38.    Not only were the CPI insurance policies unnecessary, they were more expensive than the auto insurance policies customers had already obtained on their own.

39.    Unbeknownst to borrowers, Wells Fargo obtained the policies through National General, who received a commission on the policies "sold" to borrowers, and Wells Fargo even shared in the commissions with National General, further boosting their profits.

## **PLAINTIFF'S ALLEGATIONS**

### **Plaintiff Paul Hancock**

40.    Plaintiff Paul Hancock ("Hancock") purchased a vehicle from a dealership in Shelbyville, Indiana.

41.    Plaintiff Hancock financed the purchase of his vehicle with a loan from Wells Fargo.

42.    In May 2016, Wells Fargo placed a CPI policy on Plaintiff Hancock's auto loan account and charged him $598.00.

43.    Plaintiff Hancock repeatedly contacted Wells Fargo to inform them that he had the required insurance through an auto insurance policy from Allstate.

44.    Despite receiving this information, Wells Fargo did not credit Plaintiff Hancock's account for the unlawful charge or otherwise refund the amount charged that they had collected.  Indeed, Wells Fargo continued to charge Plaintiff Hancock for the CPI policy.

45.     As a result of the increased CPI charges on his auto loan account, Plaintiff Hancock was charged a late fee immediately after the CPI policy was in place.

### Plaintiff Analisa Moskus

46.     Plaintiff Analisa Moskus ("Moskus") purchased a vehicle from a dealership in Lawndale, California.

47.     Plaintiff Moskus financed the purchase of her vehicle with a loan from Wells Fargo.

48.     In 2013, Plaintiff Moskus learned that Wells Fargo had placed a CPI policy on her auto loan account and added approximately $800 in annual CPI premiums to her loan balance.  Wells Fargo added the CPI policy to Plaintiff Moskus's loan account despite receiving proof that she already had insurance coverage through AAA.

49.     Nevertheless, Wells Fargo continued to charge Plaintiff Moskus for the CPI policy and deducted sums from her monthly loan payment to pay for the CPI premium. As a result of such deductions, Plaintiff Moskus was erroneously deemed to be delinquent under her loan agreement and Wells Fargo reported such purported delinquency to credit agencies.

### Plaintiff Brandon Haag

50.     Plaintiff Brandon Haag ("Haag") purchased a vehicle from a dealership in La Crosse, Wisconsin.

51.     Plaintiff Haag financed the purchase of his vehicle with a loan from Wells Fargo.

52.     In 2013, Plaintiff Haag learned that Wells Fargo had placed a CPI policy on his auto loan account and added approximately $500 in CPI premiums to his loan balance. Wells Fargo added the CPI policy to Plaintiff Haag's loan account despite receiving proof that he had insurance coverage through GEICO.

53.     Nevertheless, Wells Fargo continued to charge Plaintiff Haag for the CPI policy and deducted sums from his monthly loan payment to pay for the CPI premium. As a result of such deductions, Plaintiff Haag was erroneously deemed to be delinquent

under his loan agreement and was charged late fees.

## Plaintiff Adriana Avila

54.  Plaintiff Adriana Avila ("Avila") purchased a vehicle from a dealership in Houston, Texas.

55.  Plaintiff Avila financed the purchase of her vehicle with a loan from Wells Fargo.

56.  In 2014, Plaintiff Avila learned that Wells Fargo had placed a CPI policy on her auto loan account and added approximately $500 in CPI premiums to his loan balance. Wells Fargo added the CPI policy to Plaintiff Avila's loan account despite receiving proof that she had insurance coverage through GEICO.

57.  Nevertheless, Wells Fargo continued to charge Plaintiff Avila for the CPI policy and deducted sums from her monthly loan payment to pay for the CPI premium. As a result of such deductions, Plaintiff Avila was erroneously deemed to be delinquent under her loan agreement and was charged late fees.

## Plaintiff Nyle Davis

58.  Plaintiff Nyle Davis ("Davis") purchased a vehicle from a dealership in Neosho, Missouri.

59.  Plaintiff Davis financed the purchase of his vehicle with a loan from Wells Fargo.

60.  In 2016, Plaintiff Davis learned that Wells Fargo had placed a CPI policy on his auto loan account and added approximately $500 in CPI premiums to his loan balance. Wells Fargo added the CPI policy to Plaintiff Davis' loan account despite receiving proof that he had insurance coverage through Progressive and State Farm.

61.  Nevertheless, Wells Fargo continued to charge Plaintiff Davis for the CPI policy and deducted sums from his monthly loan payment to pay for the CPI premium. As a result of such deductions, Plaintiff Davis was erroneously deemed to be delinquent under his loan agreement and was charged late fees.

62.     In late 2016, Plaintiff Davis' vehicle was suddenly repossessed.  The repossession company told Plaintiff Davis that he was purportedly late on his Well Fargo auto loan payments and the bank had ordered a repossession of his vehicle.  Plaintiff Davis ultimately had to pay $1,200 to recover his vehicle from the repossession company, which included $1,035 in "redemption and reactivation" fees.

## STATUTE OF LIMITATIONS

63.     Any applicable statutes of limitations have been tolled by Defendants' knowing and active concealment, denial, and misleading actions, as alleged herein.  Plaintiffs and members of the Class, as defined below, were kept ignorant of critical information required for the prosecution of their claims, without any fault or lack of diligence on their part.  Plaintiffs and members of the Class could not reasonably have discovered the true nature of the Defendants' insurance scheme, including the kickbacks to Wells Fargo from National General.

64.     Defendants are under a continuous duty to disclose to Plaintiffs and members of the classes the true character, quality, and nature of the charges they assess on borrowers' accounts.  Defendants knowingly, affirmatively, and actively concealed the true character, quality, and nature of their assessment of the CPI auto insurance premiums against borrowers' accounts.  Plaintiffs and members of the Class reasonably relied upon Defendants' knowing, affirmative, and active concealment.  Based on the foregoing, Defendants are estopped from relying on any statutes of limitation as a defense in this action.

65.     The causes of action alleged herein did or will only accrue upon discovery of the true nature of the charges assessed against borrowers' accounts, as a result of Defendants' fraudulent concealment of material facts.  Plaintiffs and members of the Class did not discover, and could not have discovered, through the exercise of reasonable diligence, the true nature of the unlawful fees assessed against their accounts.

1

## CLASS ACTION ALLEGATIONS

2

66.     Plaintiffs bring this action, on behalf of themselves and all others similarly

3

situated, as a class action under Rule 23 of the Federal Rules of Civil Procedure.

4

67.     The classes Plaintiffs seek to represent are defined as follows:

5

**Nationwide Class**

6

All residents of the United States of America who obtained an

7

auto loan through Wells Fargo Bank, N.A. or its subsidiaries or
divisions, and who were assessed charges for CPI auto

8

insurance.

9

**California State Class**

10

All residents of the State of California who obtained an auto

11

loan through Wells Fargo Bank, N.A. or its subsidiaries or
divisions, and who were assessed charges for CPI auto

12

insurance.

13

**Indiana State Class**

14

All residents of the State of Indiana who obtained an auto loan

15

through Wells Fargo Bank, N.A. or its subsidiaries or divisions,
and who were assessed charges for CPI auto insurance.

16

**Texas State Class**

17

All residents of the State of Texas who obtained an auto loan

18

through Wells Fargo Bank, N.A. or its subsidiaries or divisions,
and who were assessed charges for CPI auto insurance.

19

**Wisconsin State Class**

20

All residents of the State of Wisconsin who obtained an auto

21

loan through Wells Fargo Bank, N.A. or its subsidiaries or

22

divisions, and who were assessed charges for CPI auto

23

insurance.

24

**Missouri State Class**

25

All residents of the State of Missouri who obtained an auto loan

26

through Wells Fargo Bank, N.A. or its subsidiaries or divisions,

27

and who were assessed charges for CPI auto insurance.

28

68.     Plaintiffs reserve the right to amend the Class definitions if discovery and further investigation reveals that the Class should be expanded or otherwise modified.

69.     Plaintiffs reserve the right to establish sub-classes as appropriate.

70.     This action is brought and properly may be maintained as a class action under the provisions of Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(1), (b)(2) or (b)(3), and satisfies the requirements thereof.  As used herein, the term "Class Members" shall mean and refer to the members of the Class.

71.     <u>Numerosity</u>:  While the exact number of members of the Class is unknown to Plaintiffs at this time and can only be determined by appropriate discovery, membership in the Class is ascertainable based upon the records maintained by Defendants.  At this time, Plaintiffs are informed and believes that the Class includes approximately 800,000 members.  Therefore, the Class is sufficiently numerous that joinder of all members of the Class in a single action is impracticable under Federal Rule of Civil Procedure Rule 23(a)(1), and the resolution of their claims through the procedure of a class action will be of benefit to the parties and the Court.

72.     <u>Ascertainablity</u>:  Names and addresses of members of the Class are available from Defendants' records.  Notice can be provided to the members of the Class through direct mailing, publication, or otherwise using techniques and a form of notice similar to those customarily used in consumer class actions arising under California state law and federal law.

73.     <u>Typicality</u>:  Plaintiffs' claims are typical of the claims of the other members of the Class which he seeks to represent under Federal Rule of Civil Procedure 23(a)(3) because Plaintiffs and each member of the Class have been subjected to the same unlawful, deceptive, and improper practices and has been damaged in the same manner thereby.

74.     <u>Adequacy</u>:  Plaintiffs will fairly and adequately represent and protect the interests of the Class as required by Federal Rule of Civil Procedure Rule 23(a)(4). Plaintiffs are adequate representatives of the Class, because they have no interests which

are adverse to the interests of the members of the Class.  Plaintiffs are committed to the vigorous prosecution of this action and, to that end, Plaintiffs have retained counsel who are competent and experienced in handling class action litigation on behalf of consumers.

75.   <u>Superiority</u>:  A class action is superior to all other available methods of the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because:

(a)   The expense and burden of individual litigation make it economically unfeasible for members of the Class to seek to redress their claims other than through the procedure of a class action.

(b)   If separate actions were brought by individual members of the Class, the resulting duplicity of lawsuits would cause members to seek to redress their claims other than through the procedure of a class action; and

(c)   Absent a class action, Defendants likely would retain the benefits of their wrongdoing, and there would be a failure of justice.

76.   Common questions of law and fact exist as to the members of the Class, as required by Federal Rule of Civil Procedure 23(a)(2), and predominate over any questions which affect individual members of the Class within the meaning of Federal Rule of Civil Procedure 23(b)(3).

77.   The common questions of fact include, but are not limited to, the following:

(a)   Whether Defendants engaged in a pattern or practice of racketeering, as alleged herein;

(b)   Whether Defendants engaged in unlawful, unfair, misleading, or deceptive business acts or practices in violation of California Business & Professions Code section 17200, *et seq.*;

(c)   Whether Defendants engaged in unfair, abuse, or deceptive acts, omissions, or practices in connection with a consumer transaction in violation of Indiana Code section 24-5-0.5, *et seq.*;

(d)     Whether Defendants engaged in false, misleading, or deceptive acts or practices in the conduct of any trade or commerce in violation of Texas Business and Commercial Code section 17.41, *et seq.*;

(e)     Whether Defendants made representations or statements of fact which were untrue, deceptive or misleading in violation of Wisconsin Statute section 100.18;

(f)     Whether Defendants made representations or statements of fact which were deceptive, fraudulent, and false in violation of Missouri Statute section 407.010, *et seq.*;

(g)     Whether Defendants' practice of charging CPI auto insurance premiums to borrowers, as alleged herein, is illegal;

(h)     Whether Defendants were members of, or participants in the conspiracy alleged herein;

(i)     Whether Plaintiffs and members of the class sustained damages, and if so, the appropriate measure of damages; and

(j)     Whether Plaintiffs and members of the Class are entitled to an award of reasonable attorneys' fees, pre-judgment interest, and costs of this suit.

78.     In the alternative, this action is certifiable under the provisions of Federal Rule of Civil Procedure 23(b)(1) and/or 23(b)(2) because:

(a)     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendants;

(b)     The prosecution of separate actions by individual members of the Class would create a risk of adjudications as to them which would, as a practical matter, be dispositive of the interests of the other members of the Class not parties to the adjudications, or substantially impair or

impede their ability to protect their interests; and

(c)   Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole and necessitating that any such relief be extended to members of the Class on a mandatory, class-wide basis.

79.   Plaintiffs are not aware of any difficulty which will be encountered in the management of this litigation which should preclude its maintenance as a class action

## FIRST CAUSE OF ACTION

**Violations of the Racketeer Influenced and Corrupt Organizations Act**
**18 U.S.C. § 1962(c)**
**(On Behalf of the Nationwide Class)**

80.   Plaintiffs incorporate by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

81.   Plaintiffs bring this cause of action on behalf themselves and the members of the Nationwide Class.

## THE CPI ENTERPRISE

82.   Defendants Wells Fargo & Company, Wells Fargo Bank, N.A., and National General Insurance Company are all persons within the meaning of Title 18 United States Code section 1961(3).

83.   At all relevant times, in violation of Title 18 United States Code section 1962(c), Wells Fargo & Company, Wells Fargo Bank, N.A., and National General Insurance Company, including their directors, employees, and agents, conducted the affairs of an association-in-fact enterprise, as that term is defined in Title 18 United States Code section 1961(4) (the "CPI Enterprise").  The affairs of the CPI Enterprise affected interstate commerce through a pattern of racketeering activity.

84.   The CPI Enterprise is an ongoing, continuing group or unit of persons and

entities associated together for the common purpose of profiting from charging Wells Fargo's auto loan borrowers for unlawful, unnecessary, and/or undisclosed collateral protection insurance policies.

85.     While the members of the CPI Enterprise participate in and are part of the enterprise, they also have an existence separate and distinct from the enterprise. The CPI Enterprise has a systematic linkage because there are contractual relationships, agreements, financial ties, and coordination of activities between Wells Fargo and National General.

86.     As discussed above, operating the CPI Enterprise according to Wells Fargo's policies and procedures, Defendants control and direct the affairs of the CPI Enterprise and use the other members of the CPI Enterprise as instrumentalities to carry out Defendants' fraudulent scheme.

87.     These policies and procedures established by Wells Fargo include sending National General a list of auto loan customers, having National General underwrite a CPI policy in the name of such customer, issuing documents that fail to properly disclose the CPI insurance, providing statements that fail to properly disclose the CPI auto insurance premiums, and arranging the order of charges to borrower's accounts to cause borrowers to become delinquent.

### THE PREDICATE ACTS

88.     Defendants' systematic schemes to unlawfully charge premiums, interest, and other charges for unnecessary CPI policies on the accounts of borrowers who have auto loans from Wells Fargo, as described above, was facilitated by the use of the United States Mail and wire. Defendants' schemes constitute "racketeering activity" within the meaning of Title 18 United States Code section 1961(1), as acts of mail and wire fraud, under Title 18 United States Code sections 1341 and 1343.

89.     In violation of Title 18 United States Code sections 1341 and 1343, Defendants utilized the mail and wire in furtherance of their scheme to defraud its auto loan customers by obtaining money from borrowers using false or fraudulent pretenses.

90.    Through the mail and wire, the CPI Enterprise provided insurance policies, lending documents, auto loan statements, payoff demands, or proofs of claims to borrowers, demanding that borrowers pay CPI auto insurance premiums and related charges.  Defendants also accepted payments and engaged in other correspondence in furtherance of their scheme through the mail and wire.

91.    The CPI auto insurance policies were unlawful and thus Defendants' representations that the premiums and related charged were owed were fraudulent and in communications to borrowers, Defendants made false statements using the Internet, telephone, facsimile, United States mail, and other interstate commercial carriers.

92.    Defendants' fraudulent statements were material to Plaintiffs and the members of the Class.  Defendants represented that the CPI auto insurance charges were lawful and necessary and required for Plaintiffs and members of the class to maintain their loan accounts in good standing and avoid further late fees and repossession of their vehicles.

93.    Each of these acts constituted an act of mail fraud for purposes of Title 18 United States Code section 1341.

94.    Additionally, using the Internet, telephone, and facsimile transmissions to fraudulently communicate false information about the premiums and fees to borrowers, to pursue and achieve their fraudulent scheme, Defendants engaged in repeated acts of wire fraud in violation of Title 18 United States Code section 1343.

95.    In an effort to pursue their fraudulent scheme, Defendants knowingly fraudulently represented that the premiums and charges were owed.

96.    The predicate acts specified above constitute a "pattern of racketeering activity" within the meaning of Title 18 United States Code section 1961(5) in which Defendants have engaged under Title 18 United States Code section 1962(c).

97.    All of the predicate acts of racketeering activity described herein are part of the nexus of the affairs and functions of the CPI Enterprise racketeering enterprise.  The racketeering acts committed by the CPI Enterprise employed a similar method, were

related, with a similar purpose, and they involved similar participants, with a similar impact on the members of the Class.  Because this case is brought on behalf of a class of similarly situated borrowers and there are numerous acts of mail and wire fraud that were used to carry out the scheme, it would be impracticable for Plaintiffs to plead all of the details of the scheme with particularity.  Plaintiffs cannot plead the precise dates of all of Defendants' uses of the mail and wire because this information cannot be alleged without access to Defendants' records.

98.    The pattern of racketeering activity is currently ongoing and open-ended, and threatens to continue indefinitely unless this Court enjoins the racketeering activity.

99.    Numerous schemes have been completed involving repeated unlawful conduct that by its nature, projects into the future with a threat of repetition.

100.    As a direct and proximate result of these violations of Title 18 United States Code sections 1962(c) and (d), Plaintiff and members of the class have suffered substantial damages.  Defendants are liable to Plaintiffs and members of the Class for treble damages, together with all costs of this action, plus reasonable attorney's fees, as provided under Title 18 United States Code section 1964(c).

## SECOND CAUSE OF ACTION

### Violation of the Racketeer Influenced and Corrupt Organizations Act, Conspiracy to Violate Title 18 United States Code section 1962(c) 18 U.S.C. § 1962(d) (On Behalf of the Nationwide Class)

101.    Plaintiffs incorporate by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

102.    Plaintiffs bring this cause of action on behalf of themselves and the members of the Nationwide Class.

103.    As set forth above, in violation of Title 18 United States Code section 1962(d), Wells Fargo and National General conspired to violate the provisions of Title 18 United States Code section 1962(c).

104.   As set forth above, Defendants, having directed and controlled the affairs of the CPI Enterprise, were aware of the nature and scope of the enterprise's unlawful scheme, and they agreed to participate in it.

105.   As a direct and proximate result, Plaintiffs and the members of the Class have been injured in their business or property by the predicate acts which make up Defendants' patterns of racketeering activity in that unlawful CPI insurance premiums were assessed on their auto loan accounts.

## THIRD CAUSE OF ACTION

**Violation of Unfair Business Practices Act**
**California Business & Professions Code §§ 17200 *et seq*.**
**(On Behalf of the California State Class)**

106.   Plaintiffs incorporate by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

107.   Plaintiff Moskus bring this cause of action on behalf of  herself and the members of the California State Class.

108.   California Business and Professions Code section 17200 prohibits "any unlawful, unfair or fraudulent business act or practice."  For the reasons described above, Defendants have engaged in unfair, or fraudulent business acts or practices in violation of California Business and Professions Code sections 17200 *et seq*.

109.   Defendants' charging Plaintiff and class members for unnecessary and unrequested CPI auto insurance policies, fraudulent statements regarding the charges, and omissions of material facts, as set forth herein, all constitute unlawful practices because they violate, *inter alia*, Title 18 United States Code sections 1341, 1343, and 1962; California Civil Code sections 1572, 1573, 1709, 1710, and 1711; and the common law.

110.   Defendants' charging Plaintiff and class members for unnecessary and unrequested CPI policies, fraudulent statements regarding the charges, and omissions of material facts, as set forth herein, also constitute "unfair" business acts and practices

within the meaning of California Business and Professions Code sections 17200 *et seq.*, in that Defendants' conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous.  Defendants' violation of California's consumer protection and unfair competition laws in California resulted in harm to consumers.

111.   There were reasonable alternatives available to Defendants to further Defendants' legitimate business interests, other than the conduct described herein.

112.   California Business and Professions Code section 17200 also prohibits any "fraudulent business act or practice."  Defendants' charging Plaintiff and class members for unnecessary and unrequested CPI auto insurance policies, fraudulent statements regarding the charges, and omissions of material facts, as set forth above, was false, misleading, or likely to deceive the public within the meaning of California Business and Professions Code section 17200.  Defendants' conduct and statements were made with knowledge of their effect, and was done to induce Plaintiff and members of the Class to pay the CPI auto insurance premiums.

113.   Plaintiff relied on the reasonable expectation that Defendants comply with the law. Plaintiff and members of the class relied on Defendants' representations that the charges were lawful and necessary and required to maintain their loans in good standing and avoid repossession of their vehicles.

114.   Plaintiff and members of the Class have been injured in fact and suffered a loss of money or property as a result of Defendants' fraudulent, unlawful, and unfair business practices.

115.   Defendants have thus engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiff and members of the Class to judgment and equitable relief against Defendants, as set forth in the Prayer for Relief.

116.   Additionally, under Business and Professions Code section 17203, Plaintiff and members of the Class seek an order requiring Defendants to immediately cease such acts of unlawful, unfair, and fraudulent business practices, and requiring Defendants to correct their actions.

## FOURTH CAUSE OF ACTION

### Violations of the Indiana Deceptive Consumer Sales Act

### Ind. Code 24-5-05, *et seq.*

### (On Behalf of the Indiana State Class)

117. Plaintiffs incorporate by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

118. Plaintiff Hancock brings this cause of action on behalf of himself and the Indiana State Class against Defendants.

119. Plaintiff Hancock is a person, Defendants are suppliers, and Plaintiff Hancock's auto loan is a consumer transaction within the meaning of Ind. Code 24-5-0.5-3.

120. The Indiana Deceptive Consumer Sales Act prohibits unfair, abusive, or deceptive acts, omissions, and practices in connection with a consumer transaction.

121. Defendants' conduct in charging Indiana State Class Members for the unnecessary, overpriced CPI auto insurance policies constitutes an unfair, abusive, and deceptive act and practice.

122. In the course of their business, Defendants concealed and suppressed material facts concerning the CPI auto insurance. Defendants failed to properly disclose the policies and failed to disclose the policies were unnecessary and unlawful.

123. Plaintiff Hancock and class members relied on Defendants' fraudulent representations that the CPI auto insurance charges were lawful and necessary and required to maintain their accounts in good standing and avoid repossession of their vehicles.

124. Plaintiff Hancock and class members were damaged by paying for unlawful premiums and other charges related to the CPI auto insurance policies.

125. Defendants' conduct is an incurable deceptive act because it was done as part of a scheme with intent to defraud and mislead.

# FIFTH CAUSE OF ACTION

**Violations of the Texas Deceptive Trade Practices-Consumer Protection Act**

**Tex. Bus. & Com. Code §§ 17.41,** *et seq.*

**(On Behalf of the Texas State Class)**

126.   Plaintiffs incorporate by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

127.   Plaintiff Avila brings this cause of action on behalf of herself and the Texas State Class against Defendants.

128.   The Texas Deceptive Trade Practices-Consumer Protection Act prohibits false, misleading, or deceptive acts or practices in the conduct of any trade or commerce.

129.   Defendants' conduct in charging Texas State Class Members for the unnecessary, overpriced CPI auto insurance policies constitutes a false, misleading, and deceptive act and practice.

130.   In the course of their business, Defendants concealed and suppressed material facts concerning the CPI auto insurance. Defendants failed to properly disclose the policies and failed to disclose the policies were unnecessary and unlawful.

131.   Plaintiff Avila and class members relied on Defendants' fraudulent representations that the CPI auto insurance charges were lawful and necessary and required to maintain their accounts in good standing and avoid repossession of their vehicles.

132.   Plaintiff Avila and class members were damaged by paying for unlawful premiums and other charges related to the CPI auto insurance policies.

133.   Defendants conduct was intentional.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SIXTH CAUSE OF ACTION

### Violations of the Wisconsin Deceptive Trade Practices Act

### Wis. Stat. 100.18

### (On Behalf of the Wisconsin State Class)

134.   Plaintiffs incorporate by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

135.   Plaintiff Haag brings this cause of action on behalf of himself and the Wisconsin State Class against Defendants.

136.   The Wisconsin Deceptive Trade Practices Act prohibits untrue, deceptive, or misleading representations in the sale of goods and services to the public.

137.   Defendants' representations to the Wisconsin State Class regarding the unnecessary, overpriced CPI auto insurance policies were untrue, deceptive, and misleading.

138.   Plaintiff Haag and class members relied on Defendants' untrue, deceptive, and misleading representations that the CPI auto insurance charges were lawful and necessary and required to maintain their accounts in good standing and avoid repossession of their vehicles.

139.   Plaintiff Haag and class members were damaged by paying for unlawful premiums and other charges related to the CPI auto insurance policies.

## SEVENTH CAUSE OF ACTION

### Violations of the Missouri Merchandising Practices Act

### Wis. Stat. 100.18

### (On Behalf of the Missouri State Class)

140.   Plaintiffs incorporate by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

141.   Plaintiff Davis brings this cause of action on behalf of himself and the

Missouri State Class against Defendants.

142.   The Wisconsin Deceptive Trade Practices Act prohibits deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any good or service in trade or commerce.

143.   Defendants' representations to the Missouri State Class regarding the unnecessary, overpriced CPI auto insurance policies were deceptive, fraudulent, and false, and the force-placing of the CPI policies constitutes an unfair practice.

144.   Plaintiff Davis and class members relied on deceptive, fraudulent, and false representations that the CPI auto insurance charges were lawful and necessary and required to maintain their accounts in good standing and avoid repossession of their vehicles.

145.   Plaintiff Davis and class members were damaged by paying for unlawful premiums and other charges related to the CPI auto insurance policies.

## EIGHTH CAUSE OF ACTION

### Unjust Enrichment

146.   Plaintiffs incorporate by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

147.   Plaintiffs brings this cause of action on behalf of themselves and the members of each of the Classes.

148.   By their wrongful acts and omissions of material facts, Defendants were unjustly enriched at the expense of Plaintiffs and members of the Class.

149.   Thus, Plaintiffs and members of the Class were unjustly deprived.

150.   It would be inequitable and unconscionable for Defendants to retain the profit, benefit and other compensation they obtained from their fraudulent, deceptive, and misleading conduct alleged herein.

151.   Plaintiffs and members of the Class seek restitution from Defendants, and

seek an order of this Court disgorging all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct.

## NINTH CAUSE OF ACTION

### Fraud

152.   Plaintiffs incorporates by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

153.   Plaintiffs bring this cause of action on behalf of themselves and the members of each of the Classes.

154.   Defendants concealed and suppressed material facts, namely, that the CPI auto insurance policies were unlawful and unnecessary. In truth and in fact, borrowers were not obligated to pay for the CPI auto insurance policies or the inflated premiums, late fees and other expenses that resulted. Contrary to Defendants' communications, Defendants were not legally authorized to assess and collect these charges and fees.

155.   Plaintiffs and class members relied on Defendants' representations that the CPI auto insurance charges were lawful and necessary and required to maintain their accounts in good standing and avoid repossession of their vehicles.

156.   Defendants knew their unnecessary CPI auto insurance policies were unlawful and their concealment and suppression of materials facts relating to those polices was false, misleading, and unlawful.

157.   As a result of Defendants' fraudulent conduct, Plaintiffs and members of the Class have been injured in fact and suffered a loss of money or property.  Plaintiffs and members of the Class paid for the CPI auto insurance policies and other fees as a result of Defendants' conduct.

158.   Defendants omitted and concealed material facts, as discussed above, with knowledge of the effect of concealing of these material facts.  Defendants knew that by misleading consumers, they would generate higher profits.

159.   Plaintiffs and members of the Class justifiably relied upon Defendants'

knowing, affirmative, and active concealment.  By concealing material information about their scheme to assess undisclosed insurance premium fees on borrowers' accounts, Defendants intended to induce Plaintiffs and members of the Class into believing that they owed Defendants money that Defendants were not actually entitled.  Moreover, in many instances, the amount necessary to cover the premium and interest for the policy was automatically deducted from the borrowers' bank account without the borrowers' knowledge.

160.   Defendants acted with malice, oppression, or fraud.

161.   As a direct and proximate result of Defendants' conduct and omissions and active concealment of material facts, Plaintiffs and each member of the Class has been damaged in an amount according to proof at trial.

## **PRAYER FOR RELIEF**

Plaintiffs, and on behalf of themselves and all others similarly situated, request the Court to enter judgment against Defendants, as follows:

1.   Certifying the Classes, as requested herein, certifying Plaintiffs as the representatives of the Classes, and appointing Plaintiffs' counsel as counsel for the Classes;

2.   Ordering that Defendants are financially responsible for notifying all members of the Classes of the alleged omissions discussed herein;

3.   Awarding Plaintiffs and the members of the Classes compensatory damages in an amount according to proof at trial;

4.   Awarding restitution and disgorgement of Defendants' revenues and/or profits to Plaintiffs and members of the Classes;

5.   Awarding Plaintiffs and the members of the Classes treble damages in an amount according to proof at trial;

6.   Awarding declaratory and injunctive relief as permitted by law or equity, including:  enjoining Defendants from continuing the unlawful practices as set forth herein, and directing Defendants to identify, with Court supervision, victims of its conduct

and pay them restitution and disgorgement of all monies acquired by Defendants by means of any act or practice declared by this Court to be wrongful;

7.     Ordering Defendants to engage in corrective advertising;

8.     Awarding interest on the monies wrongfully obtained from the date of collection through the date of entry of judgment in this action;

9.     Awarding attorneys' fees, expenses, and recoverable costs reasonably incurred in connection with the commencement and prosecution of this action; and

10.     For such other and further relief as the Court deems just and proper.

Dated:  August 15, 2017                      BARON & BUDD, P.C.


By:   _____*/s/ Roland Tellis*_____
          Roland Tellis

Daniel Alberstone (SBN 105275)
Roland Tellis (SBN 186269)
Mark Pifko (SBN 228412)
Jonas P. Mann (SBN 263314)
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California  91436
Telephone:   (818) 839-2333
Facsimile:   (818) 986-9698

Attorneys for Plaintiffs Paul Hancock,
Analisa Moskus, Brandon Haag, Adriana
Avila, and Nyle Davis individually, and on
behalf of other members of the public
similarly situated

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial of their claims by jury to the extent authorized by law.

Dated: August 15, 2017

BARON & BUDD, P.C.

By: ___/s/ *Roland Tellis*_____
      Roland Tellis

Daniel Alberstone (SBN 105275)
Roland Tellis (SBN 186269)
Mark Pifko (SBN 228412)
Jonas P. Mann (SBN 263314)
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone: (818) 839-2333
Facsimile: (818) 986-9698

Attorneys for Plaintiffs Paul Hancock, Analisa Moskus, Brandon Haag, Adriana Avila, and Nyle Davis, individually, and on behalf of other members of the public similarly situated